UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE ALOMAR-BAELLO, | : |
| Petitioner, | : Civ. No. 21-1033 (RBK) |
| v. | : **OPINION** |
| STEVIE KNIGHT,[1] | : |
| Respondent. | : |

**ROBERT B. KUGLER, U.S.D.J.**

I.     **INTRODUCTION**

Petitioner Jorge Alomar-Baello, a federal inmate incarcerated at FCI Fort Dix in New Jersey, is serving an aggregate 204-month sentence for a supervised release violation and drug-related convictions. ECF No. 4-2 at 3, 5. In his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, he challenges prison disciplinary proceedings that resulted in, *inter alia*, the loss of good-conduct time. ECF No. 1 at 3. For the reasons below, the petition will be denied.

II.     **BACKGROUND**

    A.   Factual Background

On April 25, 2014, Petitioner was sentenced in the United States District Court for the Middle District of Florida to an aggregate term of incarceration of 204 months, comprised of 180 months for drug-related offenses and 24 months for a supervised release violation on a previous

---

[1] Stevie Knight, the Warden of Federal Correctional Institution Fort Dix, is automatically substituted for former wardens David Ortiz and Lamine N'Dyiaye. Fed. R. Civ. P. 25(d).

offense. *See* ECF No. 4-2 at 3, 5. He is scheduled to be released from federal custody in May 2027.[2]

The disciplinary sanctions against Petitioner arose from the following facts. On February 13, 2020, Petitioner was issued an incident report charging him with possession of a hazardous tool (a cell phone), which the report described as a violation of "Prohibited Act Code 108." ECF No. 4-4 at 6. The report describes the incident as follows:

> On February 13, 2020 at approximately 8 p.m., I (Senior Officer Specialist Roman) was conducting a shakedown on the camo (6695) on the B wing. Upon entering the B wing near the laundry room I observed inmate Alomar-Baello, Jorge register number 74170-053 standing with a gold Samsung cell phone in his hand. Inmate Alomar-Baello was identified utilizing the bed book roster and the inmate's ID card.

*Id*. On February 14, 2020, a copy of the report was delivered to Petitioner at 5:45 p.m. *Id.* at 2, 6.

Immediately thereafter, a lieutenant identified as "L. Reynolds" investigated the incident. *Id.* at 6. The report reflects that Reynolds advised Petitioner of his rights; Petitioner acknowledged he understood them; and he made the following statement: "The phone was by me." *Id.* at 7–8. It further reflects that Petitioner "displayed a Poor attitude" and did not request a witness. *Id.* at 7. Reynolds referred the matter to a Unit Discipline Committee ("UDC"). *Id*.

Petitioner appeared before a UDC two days after the incident in question, on February 15, 2020. *Id.* at 6. He alleged that the "staff are lying." *Id*. Based on the incident report and the recovered phone, the UDC referred the matter to a discipline hearing officer ("DHO") for further review. *Id*.

Also on February 15, 2020, Petitioner signed a form titled "Notice of Discipline Hearing Before the (DHO)" indicating that (1) he did not wish to have a staff representative and (2) he

---

[2] *See* https://www.bop.gov/inmateloc/ (search "Jorge Luis Alomar-Baello"; last visited Dec. 30, 2023).

wished to call a witness—a fellow inmate named Leonard James Brickhouse[3]—who would testify "[t]hat the phone is not [Petitioner's]." *Id.* at 9. Petitioner also signed a form titled "Inmate Rights at Discipline Hearing" acknowledging that he had been advised of his rights before the DHO, including: (1) the right to receive a written copy of the charges at least 24 hours prior to the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative at the hearing; (3) the right to call witnesses, present witness statements, and introduce documentary evidence, "provided institutional safety would not be jeopardized"; (4) the right to present a statement or to remain silent; (5) the right to be present throughout the disciplinary hearing; (6) the right to receive written notice of the DHO's decision and the facts supporting the decision; and (7) the right to appeal. *Id.* at 8.

Petitioner appeared before the DHO on April 15, 2020. *Id.* at 2. A report reflects he was advised of his due process rights, stated he understood them, and provided the following statement: "I am not guilty[.] I did not have a phone in my hand." *Id.* at 2, 4. The report further reflects that "no procedural issues were cited by the inmate and no documentary evidence was provided for consideration." *Id.* at 2, 4. Petitioner's witness was not called at the hearing because:

> There was no available staff to escort the inmate witness, from Federal Correctional Institution (FCI) Facility, to the Special Housing Unit (SHU) Hearing Room to provide In-Person testimony. In addition Federal Correctional Institution (FCI) Facility is on lockdown status.

*Id.* at 3. The witness did, however, provide a written statement: "I do not want anything to do with that situation, I know nothing." *Id.* at 10. "[T]he witness statement was read aloud during

---

[3] Respondent identifies the witness as "Leonard James Brickhouse" in his publicly filed response to the petition (ECF No. 4 at 5), but filed exhibits with the witness's name redacted (ECF No. 4-4 at 4, 9, 10). Petitioner, however, provides the Court with an unredacted DHO Report that identifies the witness as both "Leonard James" and "Leonard James Brickhouse." ECF No. 1-1 at 18, 19; ECF No. 5 at 13.

the DHO hearing, in the presence of [Petitioner],"[4] and "all relevant information was relayed to [Petitioner]."

The DHO determined that Petitioner failed to "present sufficient evidence to refute the charge," and found, "based on the greater weight of the evidence," that Petitioner committed "the prohibited act of Possession of a Hazardous Tool." *Id.* at 4. This decision was based on the following evidence: (1) Officer Roman's eyewitness statement that he saw Petitioner "standing with a gold Samsung cell phone in his hand"; (2) Petitioner's testimony stating he did not have the phone in his hand; (3) the written testimony from Petitioner's witness indicating he had no information; and (4) "the photograph depicting the gold Samsung cell phone found in [Petitioner's] possession, located on [Petitioner's] hand . . . by staff during a search."[5] *Id*.

The DHO explained his determination that Petitioner failed to present sufficient evidence to refute the charge as follows:

> The DHO considered your statement, and denial of committing the prohibited act described in Section 11, however feels you provided the DHO with inaccurate information.[6] The DHO feels you are providing the DHO with inaccurate information in order to not accept full responsibility for your actions. You were not able to provide the DHO with any significant evidence to corroborate your claim of the reporting staff members were not being truthful in reference to you [sic] possession [of] a hazardous tool, as reported in the section 11 narrative of the incident report and photo of the hazardous tool. Based upon the reporting staff members' eyewitness account of your behavior, your observed/reported behavior/actions met the threshold for possession of a hazardous tool as described

---

[4] The DHO Report provides that the statement read at the hearing was: "I want nothing to do with the situation, and I know nothing." ECF No. 4-4 at 3.

[5] The DHO considered two photographs of the cell phone alleged to have been recovered, which appear to be the front and back of the phone with the backing and battery removed. ECF No. 4-4 at 3 (DHO Report with photographs), 11 (Chain of Custody Log for "one Gold Samsung cell phone"), 13 (FCI Fort Dix Photo Sheet).

[6] Petitioner submitted a copy of the DHO report that was different in some respects from the version provided by Respondent. In Petitioner's copy, filed with his petition, this sentence reads: "The DHO considered your statement, and denial of committing the prohibited act described in Section 11, however feels you *and your witnesses* are providing the DHO with some inaccurate information." ECF No. 1-1 at 19 (emphasis added). This version of the report was not signed by the DHO. *Id.* at 20.

> above. The DHO gave greater weight to the staff members' eyewitness account of the incident. Based on the evidence submitted in reference to this incident report, your reported actions met the threshold for possession of hazardous tool phone as described above.

*Id.* at 4.

The DHO disallowed 41 days of good conduct time, and imposed 60 days of disciplinary segregation (suspended pending clear conduct for 180 days), and 180 days' loss of visiting privileges, because "[p]ossessing a hazardous tool significantly threatens the health, safety and welfare, not only of [Petitioner], but of all persons" at FCI Fort Dix. *Id*. The DHO explained that "[p]ast evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct." *Id.* at 5.

The DHO report indicates that the DHO provided Petitioner a copy of the report on April 17, 2020, and Petitioner was advised that he had the right to appeal within 20 days. *Id*. Petitioner thereafter appealed, alleging that he "received an unsigned DHO report" on May 6, 2020. ECF No. 1-1 at 3. Respondent does not dispute that Petitioner exhausted his administrative remedies. *See* ECF No. 4 at 7 ("According to a review of the BOP records, Petitioner exhausted his available administrative remedies at the regional and national levels relating to the DHO's finding."); ECF No. 4-1 (Decl. of Federal Bureau of Prisons ("BOP") Paralegal Specialist Robin Summers ("Summers Decl.")) at 2 ¶ 6 (same) (citing ECF No. 4-2 at 16–19 (Administrative Remedy Generalized Retrieval document for Petitioner)).

In pursuing his administrative remedies, Petitioner argued, *inter alia*, that at the DHO hearing, he was not permitted to call a witness named Tevin Madison and to have the following declaration from Madison entered into the record:

> On Thursday, February 13th, 2020 I was in the B Unit talking to fellow inmate [Petitioner] about DPW and Town Driver work assignments when officers

5

> swarmed the unit saying "nobody move" so we stopped where we stood with our hands up at that point people were running and throwing phones everywhere. Then an officer grabbed [Petitioner] by the arm and picked up a phone from the floor, 10 feet away, then he told me to go to my bunk so I walked away. Alomar nor I had a phone.

ECF No. 1-1 at 8 (Madison Decl. dated March 5, 2020); *see also id.* at 4–7 (Central Office and Regional Administrative Remedy Appeals).

### B. The Habeas Petition

Petitioner, proceeding pro se, filed this § 2241 petition in January 2021. ECF No. 1. He argues that the DHO hearing violated his due process rights because the factfinder was not impartial, and because he was not permitted to provide documentary evidence or present witness testimony. ECF No. 1 at 13. Respondent answered in June 2021, arguing that that the Court should deny the petition because (1) the record demonstrates that Petitioner received appropriate due process throughout the disciplinary process (ECF No. 4 at 8–12); and (2) the DHO's determination that Petitioner violated Code 108 was supported by "some evidence," the applicable standard for BOP disciplinary hearings (*id.* at 12–16). Petitioner replied in July 2021, arguing, *inter alia*, that Respondent cites the discrepancies between the signed DHO report provided by Respondent and the unsigned version that was evidently provided to Petitioner, and argues that the Respondent relies on "a falsified document to attempt to convict and take away 41 days from Petitioner." ECF No. 5 at 4–5.

For the reasons that follow, the Court will deny the petition.

### III.    DISCUSSION

#### A. Applicable Law

"Federal prisoners have a liberty interest in statutory good time credits." *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72 (3d Cir. 2020) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); 18 U.S.C. § 3624(b)(1); *Vega v. United States*, 493 F.3d 310, 314 n.4 (3d

6

Cir. 2007)). Thus, a prison disciplinary hearing that may result in the loss of good conduct time must provide at least the following due process safeguards:

> (1) at least twenty-four hours of advance written notice of the charges, (2) an opportunity to call witnesses and present documentary evidence, (3) assistance from an inmate representative if the charge involves complex issues or if the prisoner is illiterate, and (4) a written decision explaining the evidence relied upon and the reasons for the disciplinary action."

*Id.* at 72 (citing *Wolff*, 418 U.S. at 563–67). "Technical errors, such as a failure to meet the requirements of standard BOP procedure, will not provide a basis for habeas relief, and any alleged denial of [d]ue [p]rocess will suffice to overturn a disciplinary proceeding only where those errors were, in fact, prejudicial." *Jones v. Merendino*, No. CV 23-89, 2023 WL 8295274, at *2 (D.N.J. Dec. 1, 2023) (citing *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012); *Wilson v. Ashcroft*, 350 F.3d 377, 380–81 (3d Cir. 2003)).

Inmates are also entitled to a "proceeding before an impartial decision-making body." *Campbell*, 808 F. App'x at 72. To that end, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the prisoner's case." *Redding v. Holt*, 252 F. App'x 488, 491 (3d Cir. 2007) (citing *Wolff*, 418 U.S. at 592)); *see also Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008) ("the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body") (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974)).

"Where a prisoner's rights have been respected, a prison disciplinary finding will stand on habeas review so long as it is supported by 'some evidence in the record.'" *Jones*, 2023 WL 8295274, at *2 (quoting *Campbell*, 808 F. App'x at 72). This standard "is minimal and 'does not require examination of the entire record, independent assessment of the credibility of witnesses,

7

or the weighing of evidence." *Id.* (quoting *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)).

B. Analysis

As noted, Petitioner contends that his due process rights were violated because he was not provided with an independent factfinder and he was not allowed to present witness testimony or provide documentary evidence at his hearing. ECF No. 1 at 13; ECF No. 5 at 1–2.

As to the first claim—lack of impartiality—Petitioner argues that the DHO's finding evinces bias because (1) the incident report describes the cell phone as gold, but "[t]he phone in the pic[tu]re is black" (ECF No. 1 at 10); (2) "the cell phone . . . was never provided to the Petitioner" (ECF no. 1 at 14); (3) "[t]he DHO used a different witness name than the actual witness [Petitioner] wished to call" (ECF No. 1 at 10; *see also* ECF No. 5 at 2 ("[T]he DHO . . . lied[] by presenting a witness whom he claimed [Petitioner] called"; however "[t]he witness that he attempted to call, Tevin Madison, was not permitted to testify in person and the witness statement presented in [Petitioner's] 2241 is the correct witness along with the sworn affidavit.")); (4) the DHO relied on "falsified documents" (ECF No. 5 at 6), including the "Notice of Discipline Hearing Before the (DHO)," which allegedly contains Petitioner's forged signature (ECF No. 5 at 9), and "a falsified new DHO report which omits the DHO not believing the witness" (ECF No. 1-1 at 19; ECF No. 4-4 at 4). *See also* ECF No. 5 at 6 ("The DHO's arbitrary and capricious decision by using falsified and misleading statements including the wrong color cell phone, forged signature and a falsified new DHO report which omits the DHO not believing the witness shows the DHO was not an impartial fact-finder.").

The Court rejects Petitioner's arguments for several reasons. First, as explained above, "due process is satisfied as long as no member of the disciplinary board has been involved in the

investigation or prosecution of the prisoner's case." *Redding*, 252 F. App'x at 491 (citing *Wolff*, 418 U.S. at 592). Petitioner does not present evidence, or even allege, that the DHO was involved in the investigation or prosecution of his case, and has therefore failed to demonstrate impartiality.[7]

Second, to the extent Petitioner argues that the DHO's unfavorable determination is itself evidence that the DHO was biased, the argument is without merit. A "claim of general bias is not sufficient to indicate the type of direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge" necessary to demonstrate impartiality. *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (internal quotation marks omitted); *see also Rodriguez v. Ebbert*, No. 15-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) (a "'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation").

Third, Petitioner's claim regarding the photographs—that the incident report described the Samsung cell phone as gold, but the phone appears to be black in the photographs appended to the report—does not support a finding of bias. Petitioner's disagreement with the DHO's fact finding is an insufficient basis upon which to find impartiality. *See, e.g.*, *Jacques v. Ortiz*, No. 20-1559, 2022 WL 392858, at *9 (D.N.J. Feb. 9, 2022) ("Petitioner appears to allege that the DHO's fact finding decisions show that the DHO was biased. . . . Petitioner's 'evidence' in

---

[7] *See, e.g.*, *Wall v. Bledsoe*, No. 10-0159, 2011 WL 810174, at *1 (M.D. Pa. Mar. 2, 2011) ("As to his charge of bias on the part of the DHO, petitioner's claim is without merit. Petitioner is entitled to an impartial disciplinary tribunal, which excludes only those officials who have direct personal involvement in the circumstances underlying the charge. Here, there is no evidence of record that the DHO was involved in the investigation of the underlying charge.") (citations omitted); *Ali v. Nash*, No. 05-3205, 2006 WL 932341, at *6 (D.N.J. Apr. 11, 2006) (rejecting petitioner's bias claim where "the DHO was not involved in the investigation or circumstances underlying the charge," and there was "nothing in the record to support [Petitioner's] general contention that the DHO was not fair or impartial, or abused his authority during the disciplinary proceedings").

9

support of this claim are merely his disagreements and displeasure with the DHO's reasoning and decisions. . . . [T]he DHO considered Petitioner's evidence and did not assign it as much weight as Petitioner believed was appropriate. Accordingly, Petitioner has failed to demonstrate that the DHO was not impartial, and Petitioner is not entitled to habeas relief on this claim.") (citations omitted);

Moreover, the photographs contain only the front of the phone (the screen, which appears, like most modern phones, to be black) and the back of the phone with the backing removed. ECF No. 4-4 at 3, 12. In other words, the photographs do not (unfortunately) depict the color of the phone at all. However, the record also contains a "Chain of Custody Log," stating that the phone is a "Gold Samsung cell phone" (ECF No. 4-4 at 11), which accords with the incident report describing the phone as gold (*id.* at 3, 12). Thus, the evidentiary weight the DHO gave to those photographs does not provide a basis for a finding of bias, *see Jacques*, 2022 WL 392858, at *9, and, in any event, Petitioner has not demonstrated that the phone depicted in the photographs was black and not gold.

Third, Petitioner's argument that "the DHO . . . lied[] by presenting a witness whom he claimed [Petitioner] called" has no support in the record. Petitioner asserts that Madison "was not permitted to testify in person nor was his sworn affidavit permitted to be entered into the record." ECF No. 1-1 at 4. Yet, he presents no evidence aside from his own statements that he designated Madison as a witness and sought to have him testify at the hearing before the DHO, nor does he present evidence that his signature on the "Notice of Discipline Hearing Before the (DHO)" (ECF No. 4-4 at 9)—the form containing his designation of Brickhouse as his witness—was forged. In this regard, the Court notes that the signature is not dissimilar to the signature on the "Inmate Rights at Discipline Hearing" form, which Petitioner has not alleged was forged. He

10

also provides no explanation for why, if he had designated Madison as his witness, someone would have prepared a form designating a different witness and forged his signature on the form. Moreover, a "J. Wright, Case Manager" signed the form as well, and indicated that he or she gave it to Petitioner on February 15, 2020 (ECF No. 4-4 at 9), well in advance of his April 15, 2020 hearing; yet Petitioner presents no evidence that prior to the hearing he sought to designate Madison as his witness instead of Brickhouse. Additionally, only Brickhouse's statement was read at the hearing, yet Petitioner raised no procedural issues regarding the hearing. ECF No. 4-4 at 2, 3. On this record, Petitioner's allegation of bias based on the alleged failure to call Madison as a witness is without merit.

Fourth, Petitioner's argument that impartiality is demonstrated by the DHO's alleged reliance on "a falsified new DHO report which omits the DHO not believing the witness" (ECF No. 5 at 6) also fails. As an initial matter, Petitioner provides no support for the assertion that the DHO relied on the unsigned report, rather than the report bearing the DHO's signature, which was provided to Petitioner on April 17, 2020. ECF No. 4-4 at 4 (DHO Report signed by the DHO as both the Discipline Hearing Officer and the individual who delivered the report to Petitioner). Indeed, in his declaration, the DHO "confirmed the truth and accuracy of the "DHO packet"—which includes the DHO Report—"relating to Incident Report number 3365718," which was filed by Respondent in support of his response to the petition. ECF No. 4-3 at 1 (June 21, 2021 Decl. of DHO Keith Hampton ("Hampton Decl.")); ECF No. 4-4 (DHO packet attached as Exhibit 1 to the Hampton Decl.). To the extent Petitioner alleges that Respondent submitted a falsified document, he has provided no basis for such a finding.

The Court also notes that there is only a slight difference in the substance of the two reports. The signed DHO Report reads: "The DHO considered your statement, and denial of

committing the prohibited act described in Section 11, however feels *you* provided the DHO with inaccurate information" (ECF No. 4-4 at 4) (emphasis added); while the unsigned report reads: "The DHO considered your statement, and denial of committing the prohibited act described in Section 11, however feels you *and your witnesses* are providing the DHO with some inaccurate information.") (ECF No. 1-1 at 19 (emphasis added)). Given Brickhouse's witness statement—"I know nothing" (ECF No. 4-4 at 10)—and the fact that Brickhouse was Petitioner's only witness, the reference in the unsigned report to "your witnesses" is immaterial and does not support a finding of bias. *See*, *e.g.*, *Beasley v. N'Diaye*, No. 22-585, 2023 WL 3720843, at *7 (D.N.J. May 30, 2023) ("The use of imperfect language does not equate to bias. Although the DHO decision could have been more precise, it is clear that the DHO credited the staff member's statement that he found the cell phones and charger in a bag that also contained a property receipt with Beasley's name on it, and the DHO discredited Beasley's denial of ownership of the bag and his suggestions that the reporting staff member was lying and/or that another inmate had placed the cellphones in the bag.").

Accordingly, for these reasons, Petitioner's claim that he was denied due process on the basis that the DHO was impartial is without merit and must be rejected.

Petitioner's argument that his due process rights were violated because he was not permitted to present witness testimony will also be rejected. As an initial matter, "'[i]nmates do not have an unqualified right to call witnesses,'" *Kenney v. Lewisburg*, 640 F. App'x 136, 139 (3d Cir. 2016) (quoting *Wolff*, 418 U.S. at 566), and there is no evidence in the record establishing that Petitioner was denied the right to call a witness of his choice. Rather, as explained above, the evidence demonstrates that Petitioner designated Brickhouse—not Madison—as his witness (ECF No. 4-4 at 9), signed and was provided with the form

12

memorializing the designation prior to the DHO hearing (*id.*), and did not object when Brickhouse's statement was read aloud at his hearing (*id.* at 2). Accordingly, Petitioner has not established that he was denied due process on the basis that he was not permitted to designate a witness. *See Herrera-Peralta v. Ortiz*, No. 20-8958, 2021 WL 2201322, at *3 (D.N.J. June 1, 2021) (denying petitioner's claim that he was not given the opportunity to call witnesses when "the documented record contradicts Petitioner's assertion that he requested Mr. Vallencilla to be a witness in his hearing").

Petitioner's argument regarding documentary evidence is unclear. He does not specify in his petition or reply brief what documentary evidence he allegedly sought to introduce. Rather, he states only that he "has maintained that he informed the DHO several times that he wished to . . . present documentary evidence." ECF No. 1 at 14 (brief in support of Petition); ECF No. 5 (Reply brief: "Petitioner has maintained that he informed the DHO several times that he wished to . . . present documentary evidence . . . ."). In one of his administrative appeals, he alleged that "[t]he DHO violated [his] due process by not permitting [him] to present the documentary evidence that the phone in the picture was black not gold." ECF No. 1-1 at 4 (declaration of Petitioner attached to his Central Office Remedy Appeal). To the extent that he intended to raise this argument in his petition, it is also without merit. There is no evidence that Petitioner sought to present documentary evidence and was denied the opportunity to do so. Rather, the record demonstrates that Petitioner was afforded the right to do so, but declined. ECF No. 4-4 at 2, 8. Petitioner has thus failed to demonstrate a due process violation on the basis that he was prevented from presenting documentary evidence. *See Williams v. Warden of FCI McKean*, No. 19-172, 2021 WL 2810052, at *3–4 (W.D. Pa. July 6, 2021) (no due process violation where there was "no evidence in the record to support the averment, contained only in Petitioner's legal

13

briefs, that he actively sought this evidence prior to or during his DHO hearing" and Petitioner "raised no issues about the disciplinary process" at the time of his hearing.); *Bacon v. Ortiz*, 2021 WL 1138137, at *6 (D.N.J. Mar. 25, 2021) (rejecting due process claim where Petitioner asserted in his memorandum of law that he "asked for a forensic phone search to find out if the phone could be linked" to him but failed to show that his request appeared "anywhere in the record"); *Willis v. Zickefoose*, No. 11-2077, 2012 WL 2076827, at *9 (D.N.J. June 8, 2012) (rejecting petitioner's claim that the DHO denied his requests to view video evidence when the petitioner "failed to request that the DHO review the videotape of the incident, and there is no material evidence to support a claim that Petitioner ever made such a request at any time before or during his DHO hearing"); *Laor v. Fed. Bureau of Prisons*, 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was not denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied").

Petitioner received notice of the charges the day after the incident (ECF No 4-4 at 2, 6), was provided an opportunity to request witnesses and present evidence (*id.* at 2, 8), and declined a staff representative (*id.* at 2). He received a preliminary hearing before the UDC (*id.* at 6), and a final hearing before an impartial DHO (*id.* at 2–5), and was provided a statement of reasons for the DHO's decision (*id.* at 4). *See Wolff*, 418 U.S. at 563–67 (requiring an impartial decision-maker, advance notice in writing of the charges, an opportunity to call witnesses and present evidence, assistance from an inmate representative, and a written decision). Thus, Petitioner received the procedural protections he was due. *See Jones v. Merendino*, No. CV 23-89, 2023 WL 8295274, at *3 (D.N.J. Dec. 1, 2023) ("Petitioner clearly received notice of the charges the day after the incident, was provided an opportunity to request witnesses and submit statements

by his proposed witnesses, as well as his own statement, and declined a staff representative. He received a preliminary hearing before the UDC, and a final hearing before a DHO, and was provided a statement of reasons for the DHO's decision. Thus, Petitioner received all of the procedural protections to which he is due, and his Due Process rights were not violated during the prison disciplinary proceedings"); *Bacon v. Ortiz*, No. 19- 11023, 2021 WL 1138137, at *4 (D.N.J. Mar. 25, 2021) (DHO hearing met the *Wolff* requirements where: "Petitioner received notice of the charges . . . the same day the incident report was written. The next day, as evidenced by his signature on both documents, Petitioner received a DHO Hearing Notice and a Notice of Inmate Rights. Petitioner waived his right to have witnesses or a staff representative present. Six days later, . . . Petitioner attended the DHO hearing, where he was again read his rights and verbally waived his right to call witnesses or request a staff representative. Based on the evidence in the record – the incident report, Petitioner's statement, an officer memorandum, and photos of the cell phone – the DHO determined that Petitioner possessed the cell phone and imposed sanctions accordingly.") (citations omitted).

Turning to the DHO decision, the Court finds that Respondent has met the relatively low burden of establishing there was "some evidence" supporting the DHO's determination that Petitioner committed the prohibited act. *Hill*, 472 U.S. at 447; *see also id.* at 455–56 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."); *Denny v. Schultz*, 708 F.3d 140, 140 (3d Cir. 2012) ("a reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause") (quoting *Hill*, 472 U.S. at 455–56). Specifically, the DHO found credible Officer Roman's statement that, upon entering the B wing during a shakedown, he saw Petitioner standing with

the cell phone in his hand. ECF No. 4-4 at 4. The DHO did not find Petitioner's denial credible, and noted his concern that Petitioner was "not able to provide the DHO with any significant evidence to corroborate [his] claim [that] the reporting staff members were not being truthful." *Id.*; *see also id.* ("The DHO gave greater weight to the staff members' eyewitness account of the incident."). Given Petitioner's failure to provide contradictory evidence, there was sufficient evidence to support a finding that Petitioner possessed a cell phone. *See Moles v. Holt*, 221 F. App'x 92, 94 (3d Cir. 2007) ("The sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer."); *Mitchell v. Bradley*, No. CV 18-223J, 2020 WL 4904026, at *4 (W.D. Pa. Aug. 19, 2020) (rejecting habeas petition where the "Officer observed Petitioner drop the cell phone and a charger into a bucket, from where the officer retrieved it. The officer preserved the chain of custody and took pictures of the cell phone."). Accordingly, as the DHO's decision was supported by "some evidence," the petition will be denied.

### IV.   CONCLUSION

For the foregoing reasons, Petitioner's habeas petition (ECF No. 1) is denied**.** An appropriate order will follow.

Dated: January 2, 2023                                          s/ Robert B. Kugler
                                                                                HON. ROBERT B. KUGLER
                                                                                United States District Judge